# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8266 | **DATE** | 1/15/2004 |
| **CASE TITLE** | Ramos vs. Ashcroft | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at_____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons given in the attached memorandum opinion and order, Defendants' Motion to Dismiss [Doc. 26] is granted in part and denied in part; the motion is granted as to Count II, Count III, and Count IV, but it is denied as to Count I.

*David H Coar*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| ✓ | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | JAN 16 2004 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | 31 |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | | | date mailed notice | | |
| jar(lc) | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED

JAN 1 6 2004

MARIA ROSA RAMOS, et. al,                      )
                                               )
                    Plaintiffs,                )
                                               )      No. 02 C 8266
v.                                             )
                                               )      HONORABLE DAVID H. COAR
JOHN ASHCROFT, et al,                        ) )
                                               )
                                               )
                    Defendants.                )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Defendants' Motion to Dismiss Plaintiff's

Complaint for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(6).

Both parties have fully briefed the issues in Defendant's Motion and it is now ripe for decision.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Eleven immigrant plaintiffs filed this class action complaint on November 15, 2002, on

behalf of a class of immigrant plaintiffs who filed applications for adjustment of status under

Section 245(i) of the Immigration and Nationalization Act in the Chicago District Office of the

Immigration and Naturalization Service (INS) between January 29, 1997, and April 13, 2001.

The complaint challenges the policies of the Chicago District Office of the INS relating to the

processing of applications for adjustment of status under Section 245(i). Subsequent to the

processing of these applications, the Chicago office relied on the information in the applications

for adjustment of status to initiate investigations and removal proceedings against the

unsuccessful applicants.

31

The Court will again review the law governing the applications for adjustment of status under Section 245(i). In 1994, Congress enacted Section 245(i) of the Immigration and Nationalization Act to permit undocumented immigrants already in the United States to stabilize their immigration status if they were related to persons who were in the United States legally. See 8 U.S.C. § 1255(i). Although it was not referred to as an amnesty program, for those undocumented immigrants who qualified for an adjustment of status under § 245(i), it had the effect of excusing their undocumented entry to the United States. The qualifying relative could file an immediate relative visa petition on behalf of the undocumented relative (INS form I-130). Once the petition was filed and approved, the undocumented relative could submit the application for adjustment of status (INS form I-485). If a visa was immediately available to the applicant, the application could be approved at the discretion of the Attorney General and the undocumented relative could obtain a work authorization.

Plaintiffs allege that the acceptance and processing of these applications in the Chicago District Office during the class period was improper under the regulatory scheme. They contend that the applications should not have been processed under the statute and accompanying regulations unless a visa was immediately available to the applicant. Defendants assert that the Plaintiffs' reading of the immigration statutes and regulations is incorrect. They contend that the sole proper consequence of filing an application for adjustment of status when a visa was not immediately available is to deny the application.

Defendants previously moved to dismiss the complaint for lack of jurisdiction. On September 30, 2003, this Court denied that motion in a written order. See Ramos v. Ashcroft, No. 02 C 8266, 2003 WL 22282521 (N.D. Ill., Sept. 30, 2003). Defendants now seek to dismiss

2

the Complaint for failure to state a claim. Their Motion to Dismiss states several grounds for dismissal. First, they contend that the actions of the Chicago District Office were proper under the statute. Second, they contend that Plaintiffs' constitutional claims cannot be sustained as a matter of law. Finally, they assert that the Plaintiffs are ineligible for the injunctive relief that they seek in their Complaint.

## II.     STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the district court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See Transit Exp. Inc. v. Ettinger, 246 F.3d 1018, 1023 (7th Cir. 2001). The district court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957).

## III.    DISCUSSION

The central dispute between the parties in this case revolves around an interpretation of the statutes and regulations that govern the acceptance and processing of Applications for Adjustment of Status under Section 245(i) of the Immigration and Naturalization Act, 8 U.S.C. § 1255(i). The Court will begin its discussion there and then it will move on to discuss the constitutional allegations in the Complaint and the possibility of injunctive relief.

### A.     Count I: Violation of the Administrative Procedures Act

Plaintiffs allege in Count I that the policies and practices of the Chicago District Office of the INS with respect to the applications for adjustment of status violated the Administrative Procedures Act, 5 U.S.C. § 706. In order to survive a motion to dismiss, this complaint

under the Administrative Procedures Act (APA) must allege that the challenged federal agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. See 5 U.S.C. § 706.

### 1. Interpretation of 8 U.S.C. § 1255

Section 245(i) of the Immigration and Naturalization Act, 8 U.S.C. § 1255(i), sets forth the relevant law relating to the adjustment of status program. The law declares that the Attorney General "may accept such application [for adjustment of status] only if the alien remits with such application a sum equalling $1,000 as of the date of receipt of the application." 8 U.S.C. § 1255(i)(1). According to the face of the statute, then, the $1,000 special processing fee is a co-requisite of filing the application. The law further states that "upon receipt of such an application and the sum hereby required, the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence if . . . an immigrant visa is immediately available to the alien at the time the application is filed." 8 U.S.C. § 1255(i)(2). The application cannot be granted under Section 245(i) of the Act unless a visa is immediately available.

The Code of Federal Regulations contains the specific regulations that individuals must follow if they choose to seek the benefits of the statute. The parties disagree about which section of the Code of Federal Regulations governs filing of an application for adjustment of status. Defendants assert that the general filing procedures for applications to the INS, found at 8 C.F.R. § 103.2 (2000), governs the filing of these adjustment applications. Plaintiffs claim that the specific filing procedures for applications for adjustment of status found at 8 C.F.R. § 245.2(a)(2)(i) (2000) sets forth the governing filing requirements. The general rule which

Defendants urge allows that applications are properly filed when they are received, signed, and accompanied by proper payment.

Defendants point to the incorporation of these requirements in 8 C.F.R. § 245.10 as support for their position. Defendants assert that the "explicitness of 8 C.F.R. § 245.10 and its incorporated reference to 8 C.F.R. § 103.2(a)(1) and (a)(2)" is determinative. (Def. Mot. Dismiss at 5.) Defendants are correct that the explicitness of 8 C.F.R. § 245.10 is determinative of its content, but they are incorrect that it explicitly sets forth filing requirements for Adjustment of Status Applications. Section 245.10 explicitly sets filing requirements for the qualifying immigrant visa petitions that the relative of the undocumented immigrant must file prior to the application for the adjustment of status. The regulation that Defendants rely on does not reference or even mention the applications for adjustment of status that are at issue here.[1]

The regulation that the Plaintiffs highlight, by contrast, is entitled "Proper Filing of application under Section 245." 8 C.F.R. § 245.2(a)(2)(i) (2000) The regulation, as it was during the class period,[2] read:

> Before an application for adjustment of status under section 245 of the Act may be considered properly filed, a visa must be immediately available. If a visa would be immediately available upon approval of a visa petition, the application will not be considered properly filed unless such petition has first been approved. If an immediate relative petition filed for classification under section 201(b)(2)(A)(i) of the Act or a preference petition filed for classification under section 203(a) of the Act is submitted simultaneously with the adjustment application, the adjustment application shall be retained for processing only if approval of the visa petition would make a visa immediately available at the time of filing the adjustment application. If the visa petition is subsequently approved, the date of filing the adjustment application shall be deemed to be the date on which the accompanying petition was filed.

The Court holds that the filing requirements for applications for adjustment of status are clearly set forth in 8 C.F.R. § 245.2(a)(2)(i) (2000). Defendants are right, however, that Section 245.2(a)(2)(i) cannot be looked at in a vacuum, as there are significant filing requirements (location, fees, etc.) that are not discussed there. Consequently, the Court holds that the filing requirements of Section 245.2(a)(2)(i) supplement the general filing requirements of Section 103.2 and, in the event of a conflict between them, the specific requirements listed above would prevail.

By its own terms, then, the regulation dictates that the adjustment of status applications would not be considered "properly filed" unless a visa would be "immediately available." This begs the question that underlies this lawsuit: what are the consequences, if any, of filing an application for adjustment of status under §245(i) when a visa is not immediately available? Or, to put it another way, what happens to a filing that is not "properly filed"?

Plaintiffs allege that the practice in most INS district and subdistrict offices was to return the applications along with the filing and processing fees if a visa was not immediately available to the applicant. (Pl. Comp. ¶ 52) Plaintiffs urge that the Chicago District Office of the INS was similarly required by statute to return the application and the fees to the applicant if the visa was not immediately available. In support of their position, they point to the language of the Section 245.2(a)(2)(i) that indicates that the applications "shall be retained for processing only if approval of the visa petition would make a visa immediately available at the time of filing the adjustment application." 8 C.F.R. § 245.2(a)(2)(i). In the full context of the regulation (which is quoted above), however, it is clear that this circumstance does not apply *directly* to every Application for Adjustment of Status; it only applies directly when the

6

adjustment application "is submitted simultaneously" with the immediate relative visa petition. It is not clear from the complaint that any of the named Plaintiffs submitted their adjustment applications simultaneously with an immediate relative visa petition, but it is possible that some of the class members did so.

Even if none of the class members filed their applications simultaneously with an immediate relative visa petition, this would not doom the Complaint. Plaintiffs urge that the regulations should be interpreted to require a visa to be immediately available before an application for adjustment of status is accepted in the INS District Office. The policies underlying this interpretation are consistent with the policies of the statute as a whole. The statute is designed to encourage undocumented immigrant relatives to stabilize their immigration status in the United States without requiring them to leave the country. There is no apparent reason to differentiate between the premature adjustment application that is filed simultaneously with an immediate relative visa petition and a premature adjustment application that is filed subsequent to an immediate relative visa petition. If a visa is not immediately available, the applications in both instances would be denied under the statute. Plaintiffs assert that the regulations should be interpreted to require immediate availability of visas. This interpretation is compelling enough to be endorsed by the American Law Reports. See 4 A.L.R. Fed. 557, § 14 ("The regulations state that before an application for adjustment of status under § 245 may be accepted and considered properly filed, a visa must be immediately available to the applicant...").

At this stage, this Court does not need to determine whether the statute affirmatively requires the INS to reject premature adjustment applications without processing them. If many

other INS district offices in the country returned both the application and the accompanying fees to applicants when visas were not immediately available, as alleged, Plaintiffs' Complaint states a claim that the challenged agency action was arbitrary and capricious. That is all that is required to state a claim under the APA.

Accepting the allegations as true, Count I of Plaintiff's Complaint states a claim under the APA. Consequently, the Motion to Dismiss will be denied as to Count I of the Complaint.

## B.    Count II: Procedural Due Process

Count II of Plaintiff's Complaint alleges that the policy and actions of the Chicago District Office of the INS violated their procedural due process rights under the Fifth Amendment. In order to state a claim for a procedural due process violation, the Plaintiffs must allege that they have a constitutionally protected property or liberty interest. This must be a "legitimate claim of entitlement to [the benefit]" rather than "an abstract need or desire for it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

Plaintiffs cannot sustain their procedural due process claim. The Plaintiffs have conceded that they were ineligible for an adjustment of status at the time they submitted their applications. Moreover, even if the Plaintiffs were eligible for an adjustment of status, mere eligibility under the statute is not determinative of an adjustment: the Attorney General retains discretion to deny adjustment even for those who are statutorily eligible. Cf. Drax v. Reno, 338 F.3d 98, 113 (2d Cir. 2003) ("an adjustment of status under § 245(a) is entirely discretionary[;] . . . even where an alien satisfies the statutory requirements of eligibility for an adjustment of status . . ., 'the [INS] has discretion under section 245 to deny the application.' Jain v. INS, 612 F.2d 683, 687 (2d Cir.1979)."). The Supreme Court has

confirmed that the INS need not have even considered their statutory eligibility if, in its discretion, the agency determined that they were otherwise ineligible for an adjustment. See INS v. Bagamasbad, 429 U.S. 24 (1976) (per curiam). Since the Plaintiffs cannot show that they had a legitimate entitlement to the ultimate benefit of the adjustment application, their claim that the way their applications were handled is a *constitutional* problem of procedural due process under the Fifth Amendment is unavailing.

### C.    Count III: Equal Protection of the Laws

Plaintiffs claim in Count III that Defendants' actions deprived them of equal protection of the laws. Because the Plaintiffs are challenging the actions of the federal government, this claim arises under the Fifth Amendment's Due Process Clause, which contains an implicit guarantee of equal protection of the laws, rather than the Fourteenth Amendment's Equal Protection Clause (which only applies to the states). In order to sustain their complaint of an equal protection violation, the Plaintiffs must allege that the law creates distinctions between classes of aliens that were not supported by a rational basis. See Matthews v. Diaz, 426 U.S. 67, 80 (1976).

Here, Plaintiffs do not challenge the distinctions created by the law; rather they challenge the distinctions that the INS created between classes of aliens who were seeking an adjustment of status. Although this is cast as an equal protection claim, it is more properly depicted as a selective enforcement challenge to the Chicago District Office's enforcement policy. According to Plaintiff's Complaint, the Chicago District Office chose to investigate those immigrants who submitted premature applications for adjustment of status during the class period and it chose not to investigate those who submitted premature applications before

9

or after the class period.

The Supreme Court has counseled strongly against accepting a selective enforcement claim in the immigration context. See Reno v. American-Arab Anti-Discrimination Committee [Reno v. AAADC], 525 U.S. 471, 488-92 (1999). In Reno, the Court announced that "as a general matter . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." Id. at 488. The concerns that counsel caution in selective enforcement claims generally "are greatly magnified in the deporation context." Id. at 490.

To the extent that Plaintiff's purported equal protection claim alleges that this class of immigrants was treated differently than other similar classes without any rational basis to do so, such allegations would buttress their claim that the agency action was arbitrary and capricious in violation of the Administrative Procedures Act. It does not, however, state a separate constitutional claim.

### D.    Count IV: Substantive Due Process

In Count IV, Plaintiffs claim that the Defendants' actions in investigating and commencing proceedings against them interfered with their right of familial association which is protected among other substantive rights under the Due Process Clause of the Fifth Amendment. The claim that enforcement of immigration statutes unconstitutionally impinges on family relationships has never gotten far in American courts. See, e.g., Fiallo v. Bell, 430 U.S. 787 (1977) (holding that it did not violate equal protection for natural mothers to receive immigration privileges that natural fathers did not); Newton v. I.N.S., 736 F.2d 336 (6th Cir. 1984) (holding that it did not violate U.S. citizen children's rights to deport their parents). It

gets no farther today, even though Plaintiffs are right that the statute in question seeks to permit laudatory family unification.

In their response to the Motion to Dismiss, Plaintiffs contend that they are arguing in Count IV "that Defendants' actions are contrary to the spirit of section 245(i) and to the section's implementing regulations, and have interfered with their federally protected right to unite with their citizen and legal permanent resident family members." (Pl. Resp. Mot. Dismiss, at 11.) As noted above in the discussion of the procedural due process claim, the Plaintiffs do not have a "federally protected right to unite with their citizen and legal permanent resident family members." They have a federally created opportunity to apply for an adjustment of status that, if granted, would permit them to unite legally with their citizen and legal permanent resident family members. Defendants' actions are arguably contrary to the Administrative Procedures Act, but they do not run afoul of the Plaintiffs' substantive due process rights.

### E.    Limitations on Injunctive Relief

Defendants assert that Plaintiffs are statutorily precluded from granting injunctive relief on Plaintiff's Complaint under Section 242(f) of the Immigration and Naturalization Act, 8 U.S.C. § 1252(f). This portion of the statute prohibits courts other than the Supreme Court from "enjoin[ing] or restrain[ing] the operation of provisions of chapter 4 of Title II." 8 U.S.C. §1252(f)(1). Defendants are right that this does impose "nothing more or less than a limit on injunctive relief." Reno v. AAADC, 525 U.S. at 481. By its own terms, however, it would not prevent the court from considering the injunctive relief sought in this case. Plaintiffs seek to enjoin what they allege are improper practices under 8 U.S.C. § 1255 and its

11

accompanying regulations. This is outside of the scope of the statutory limitation on injunctive relief. See Catholic Social Services, Inc. v. I.N.S., 232 F.3d 1139, 1150 (9th Cir. 2000) (en banc) ("[T]he district court . . . issued the preliminary injunction under 8 U.S.C. §1255a . . . . Therefore, by its terms, the limitation on injunctive relief does not apply to the preliminary injunction granted by the district court."). The Court makes no determination on the propriety of the injunctive relief that Plaintiffs seek in this case.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss Plaintiffs' Complaint for failure to state a claim is granted as to Counts II through IV and denied as to Count I.


Enter:

David H. Coar
United States District Judge

Dated: January 15, 2004